Peter S. Doody, Bar No. 127653
doody@higgslaw.com
Joseph J. Kagan, Bar No. 306534
kaganj@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, California 92101-7913
Telephone: 619.236.1551
Facsimile: 619.696.1410

R. Clay Hoblit, Esq. (Pro Hac Vice)
choblit@hdr-law.com
HOBLIT, DARLING, RALLS, HERNANDEZ &
HUDLOW, LLP
2000 Frost Bank Plaza, 802 N. Carancahua
Corpus Christi, Texas 78401
Telephone: 361.888.9392

Attorneys for Defendant
OMNI LA COSTA RESORT & SPA, LLC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HADLEY DERUYVER, by and through her Guardian ad Litem, Christopher DeRuyver; CHRISTOPHER DERUYVER; ROBYN DERUYVER; NATHANIEL DERUYVER, by and through his Guardian Ad Litem, Christopher DeRuyver; and ZACHARY DERUYVER, by and through his Guardian ad Litem, Christopher DeRuyer,<br><br>Plaintiffs,<br><br>v.<br><br>OMNI LA COSTA RESORT & SPA, LLC, a limited liability company; DOE 1 FNU LNU, an individual; and DOES 1 through 50,<br><br>Defendants. | CASE NO. 3:17-CV-00516-H-AGS<br><br>**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Judge: Hon. Marilyn L. Huff<br>Magistrate: Hon. A.G. Schopler<br>Filed: February 2, 2017<br>Removed: March 15, 2017 |

# I.
# INTRODUCTION

Pursuant to Local Rule 16.1(f)(2)(3) the following is Defendant Omni La Costa Resort's (hereinafter "OMNI LA COSTA") Memorandum of Contentions of Fact and Law which contains a concise statement of the material facts and applicable points of law.

# II.
# STATEMENT OF FACTS

This coffee-spill incident occurred on Saturday morning, May 28, 2016 at approximately 9:00 a.m. at the Bistro 65 Restaurant located at the Omni La Costa Resort in Carlsbad, California. Plaintiffs, the DeRuyver family, consisting of two adults and three children arrived for breakfast at Bistro 65. Accompanying the family was their 22-year-old nanny, Ms. Brittany Russ.

The family and Ms. Russ were escorted by a Bistro 65 host to the outdoor patio area of the restaurant and seated at a rectangular table. A wooden high chair was brought out and placed at the east end of the table to accommodate 10-month-old Hadley DeRuyver. Either the father, Christopher DeRuyver or the nanny, Ms. Russ, placed Hadley in the high chair. At their respective depositions, Mr. DeRuyver stated he was the one who placed Hadley in the highchair, while Ms. Russ testified she placed Hadley in the highchair. Mr. DeRuyver testified he buckled Hadley into the highchair. Ms. Russ could not recall whether she buckled in Hadley, but later in her deposition testified Hadley was not buckled in.

After Hadley was seated in her high chair at the end of the table, Ms. Russ took a seat directly to the right of Hadley. To the immediate right of Ms. Russ was Zachery DeRuyver who was three years old at the time. Across the table from Zachery was his five-year older brother, Nathanial.

The DeRuyver family brought with them to the restaurant a large stroller for transporting Hadley and her various infant items. Her mother, Robyn DeRuyver,

removed a plastic placemat from the stroller. Because the placemat still had some food debris on it from the night before, Ms. DeRuyver decided to go to the women's restroom to wash off the placemat. Ms. DeRuyver walked from the patio, and through the interior of Bistro 65 to the women's restroom located in the lobby. Meanwhile, Mr. DeRuyver pushed the large stroller to the perimeter of the patio, so it would be out of the way.

A Bistro 65 waiter, Carlos Robles, arrived at the table and inquired of Ms. Russ whether anyone at the table would like coffee. Ms. Russ ordered coffee for herself and directed Mr. Robles to pour a cup of coffee at the setting directly across from Ms. Russ, and to the left of Hadley where the mother would be sitting, and a cup of coffee at the head of the table (west end) where the father would be sitting. Ms. Russ also ordered waters for the entire table.

Mr. Robles poured the three cups of coffee at the place settings and inquired of Ms. Russ if she would like him to leave the coffee pot at the table. Ms. Russ instructed Mr. Robles to leave the pot at the table. Mr. Robles then placed the pot near the center of the table and directly in front of Ms. Russ. Mr. Robles then left the table to go to the kitchen beverage area to obtain ice-waters for the table.

This coffee pot is a stainless-steel Spring Delta USA 34-ounce server. It has a thumb-latch lid. When opened, the diameter of this coffee pot is one and a half inches wide.

Sometime after Mr. Robles left the table, and before the parents returned, a coffee spill incident occurred whereby Hadley sustained coffee burns to her left fingers, torso and bilateral upper thighs. The "dipping injury" burn pattern photos of Hadley's left fingers prove that Hadley placed her left hand into a coffee mug. Coffee then spilled onto Hadley's torso and bi-lateral upper thighs.

Plaintiffs contend the coffee pot was placed too closely to Hadley and she grabbed the coffee pot and pulled it onto herself. Plaintiffs further allege the coffee pot should have had a "screw top" lid, and not a thumb latch hid.

Defendant's food and beverage expert, James Myers, will testify at trial this same coffee pot is used by many hotel organizations throughout the United States including the Hilton Hotel chain. This pot has a double insulted stainless-steel liner, and a wide bottom triangular base which provides stability. Each of these Spring USA Delta coffee pots retails for approximately $60.00. The food and beverage executive team at Omni La Costa tested this coffee server prior to being purchased. All tests prove that the Spring USA Delta beverage server was the best available purchase option and it is frequently used in the hotel restaurant industry.

It is anticipated at trial plaintiffs will contend Omni La costa should have used a coffee pot with a screw-in lid. However, as will be explained by Mr. Myers, based on his vast industry experience beverage servers with push-button or screw-in tops present operating challenges for dining guests. One guest will adjust the top and pour his/her cup of coffee. A subsequent guest will then pick up the same pot not knowing that the lid had already been adjusted for pouring and proceed to unscrew it again. This often results in a large volume of coffee over-pouring into the cup.

It is expected at trial plaintiff will argue, by innuendo or otherwise, the coffee was brewed and served at an excessive temperature. Omni La Costa has retained a coffee expert, Daniel Cox. Mr. Cox tested the brewing of the coffee brewing machine at Bistro 65 and has determined it is well within the coffee brewing industry standards between 195 to 205 degrees Farenheit.

## III.

## CONTENTIONS OF FACT AND LAW

**A.   There was no negligent conduct on the part of the Omni La Costa**

Negligence is the failure to use reasonable care to prevent harm to oneself or to others. (*Tucker v. Lombardo* (1956) 47 Cal. 2d. 457, 464). Here, as the facts will prove at trial, there was no negligent conduct by Omni La Costa Resort or its employees. The server, Carlos Robles, is a career waiter at Bistro 65 who has over

nine years of experience. Mr. Robles was directed and instructed by the nanny, Ms. Russ, to pour three cups of coffee for the table and to leave the pot at the table. After Mr. Robles left the table, the supervision of the children was the responsibility of the nanny, Ms. Russ. Ms. Russ had traveled from Michigan with the family for the sole purpose of overseeing the care of the children.

**B.     Comparative Fault of Ms. Russ, and Parents**

Omni has asserted contributory negligence and timely brought a third-party complaint against Ms. Russ based on principles of equitable indemnity. The evidence and facts at trial will prove if there was any negligent conduct it was on the part of Ms. Russ, not Omni La Costa. (*Li v. Yellow Cab Co.* (1975) 13 Cal. 3d 804, 808. Ms. Russ was the only adult at the table when the incident occurred. The jury will find some degree of comparative fault against Mr. and Mrs. DeRuyver for putting Ms. Russ in the position of control of their children.

**C.     California Civil Code §1431.2 (Proposition 51) Applies to this Case.**

Pursuant to Civil Code § 1431.2, in any action for personal injury, based on principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount. (Civil Code § 1431.2; *Evangelatos v. Superior Court* (1988) 44 Cal. 3d. 1188).

**D.     Negligent Infliction of Emotional Distress**

Mr. and Mrs. DeRuyver and Nathaniel and Zachery DeRuyver all claim negligent infliction of emotional distress against Omni. However, to prevail on this cause of action, plaintiffs must prove:

1.     Negligence;

2.     The bystander plaintiff witnessed the injury producing event;

3.     The bystander plaintiff was then aware the event was causing injury;

and

4. The bystander plaintiff suffered serious emotional distress.

(*Dillon v. Legg* (1968) 68 Cal.2d 728; *Thing v. Lachusa* (1989) 48 Cal. 3d. 644).

Here, Ms. DeRuyver was in the restroom at the time of the incident, and Mr. DeRuyver was away from the table tending to the stroller. Neither parent witnessed the injury producing event. Thus, neither parent can recover under this cause of action pursuant to the case of *Thing v. Lachusa*.

Further, an element of this claims requires "serious emotional distress." No one in the family has received any professional mental health counseling stemming from this incident which occurred over 2½ years ago.

### E. Plaintiff can only Recover "As-Paid" Medical Specials

Hadley DeRuyver was transported by ambulance from the Omni La Costa Resort to UCSD where she was admitted and treated. After several days, Hadley flew home with her parents to Ann Arbor, Michigan where she was admitted at University of Michigan Medical Center ("UMMC"). At UMMC she received skin grafting, and months later several laser treatments. Her primary surgeon was Dr. Levi. All of Hadley's medical care has been paid by her health insurer, Blue Cross. There are two sets of medical bills in this case, the much higher "as-billed" medical invoices submitted by the two hospitals and medical providers, and the lesser "as-paid" medical bills paid at a discounted rate by Blue-Cross. Pursuant to the California Supreme Court case of *Howell v. Hamilton Meats* (2011) 52 cal. 4th 541, plaintiff is only permitted to present before the jury, and seek recovery for the "as-paid" medical specials.

## IV.

## EXPERT TESTIMONY ON BEHALF OF OMNI

### 1. Dan Cox

Mr. Cox is the president of Coffee Enterprises and has been working as a professional in the coffee industry since 1981. He has experience in the coffee

manufacturing and brewing process. He is an author of a book on hot beverage and risk management.

Mr. Cox will testify regarding coffee brewing industry standards and his testing of the brewing equipment and serving temperature at Bistro 65 Restaurant. Mr. Cox will opine the brewing and serving temperatures were all within industry standards.

### 2. Jim Myers

Mr. Myers is a food and beverage industry expert. Mr. Myers for over 30 years has worked in food and beverage management for hotels. In the past he worked as the Senior Corporate Director Food and Beverage Operations for 350 national owned and operated Hilton properties.

Mr. Myers is a Certified Food and Beverage Executive (CFBE) by way of the American Hotel Motel and Lodging Association. Mr. Myers will offer industry opinion testimony regarding the sourcing, and function of the Spring USA Delta coffee server used at the Bistro 65 Restaurant as well as the operational policies and procedures of the Bistro 65 Restaurant.

### 3. Nicole Bernal, M.D.

Dr. Bernal attended medical school at the Case Western Reserve University School of Medicine in Cleveland, Ohio. She completed surgical critical care clinical fellowships at Children's Hospital of Wisconsin, as well as burn surgery clinical fellowship at the University of Iowa Hospitals and clinics. She is currently Associate Clinical Professor of Surgery at University of California, Irvine Medical Center in the Division of Trauma Burns, Critical Care and Acute Care Surgery.

Dr. Bernal conducted an independent medical examination of Hadley DeRuyver on March 28, 2018. Dr. Bernal has also reviewed all the medical records and medical photos. Dr. Bernal will opine on the nature and extent of injuries sustained by Hadley, and will opine on future medical care. Dr. Bernal will also testify regarding the burn patterns, and specifically will educate the jury regarding

the "dipping injury" burn pattern to Hadley's left fingers.

4. **Mark Gomez, Ph.D.**

Dr. Gomez is a biomechanic expert and specializes in the field of injury biomechanics. He has his Ph.D. in Applied Mechanics with a specialization in Biomechanics from the University of California, San Diego. Dr. Gomez is an assistant clinical professor of orthopedics at University of California, San Diego, School of Medicine.

Dr. Gomez will testify from a biomechanical perspective regarding the burn patterns to Hadley. He will also testify regarding testing and measurements he has conducted on exemplar coffee pots and coffee mugs as well as a site inspection and measurements of the subject table, highchair and chairs at Bistro 65. Dr. Gomez will testify that the "dipping injury" burn pattern to Hadley's left fingers were caused by reaching into a mug of hot coffee, and not a coffee pot. Dr. Gomez will also testify that the burn injuries to Hadley's torso and bilateral upper thighs are consistent with a mug of coffee spilling towards her.

5. **Tami Rockhold, R.N., B.S.N.**

Ms. Rockholt is a Registered Nurse and a medical billing auditor for major health insurers. Ms. Rockholt is the founder of Health Cost Management, LLC. Ms. Rockholt is medical billing expert.

In this case, Ms. Rockholt will rebut the testimony of plaintiff's medical billing and cost expert, Victoria Morgan of Abacus Analytics. Ms. Rockholt will offer opinion testimony regarding the reasonable value, based on medical community billing standards, of future medical care for Hadley.

6. **Robert Taylor, CPA/ABY**

Mr. Taylor is a forensic economist. He is a Certified Public Accountant and holds a Master of Business Administration degree with emphasis in finance from San Diego State University.

Mr. Taylor will place in present value the alleged costs of future medical care

to Hadley. Mr. Taylor will also rebut the testimony of plaintiff's forensic economist, Heather Xitco.

## V.

## JURY TRIAL

Defendant timely requested a trial by jury in this matter.

## VI.

## ABANDONED ISSUES

Defendant does not believe that any issues or defenses raised by the pleadings have been abandoned.

## VII.

## EXHIBIT LIST

Defendant's exhibit list is attached hereto as Exhibit A.

## VIII.

## WITNESS LIST

Defendants witness list is attached hereto as Exhibit B.

DATED: December 17, 2018

HIGGS FLETCHER & MACK LLP
JOSEPH J. KAGAN

By: /s/ Peter S. Doody
PETER S. DOODY
Attorneys for Defendant
OMNI LA COSTA RESORT & SPA, LLC.